UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ISAIAH MONTGOMERY,

         Plaintiff,      **AMENDED COMPLAINT**

    -against-         **Jury Trial Demanded**

                  **23 CV 5865 (KMK)**

ORANGE COUNTY (New York), C.O. ANDREW
HANKINS, Shield No. 441, SHERIFF CARL E.
DUBOIS, Individually and in his Official Capacity
as the Orange County Sheriff, CORRECTIONS
OFFICERS "JOHN DOE" #1-20 and/or
CORRECTIONS PERSONNEL #1-20 (the name
John Doe being fictitious, as the true names are
presently unknown),

         Defendants.

    Plaintiff ISAIAH MONTGOMERY, by his attorneys, COHEN & FITCH LLP,

complaining of the Defendants, respectfully alleges as follows that:

## PRELIMINARY STATEMENT

    1.  Plaintiff brings this action for compensatory damages, punitive damages, and

attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of his civil

rights, as said rights are secured by said statutes and the Constitutions of the State of New York

and the United States, and laws of the State of New York against Defendants ORANGE

COUNTY (New York), C.O. ANDREW HANKINS, Shield No. 441, SHERIFF CARL E.

DUBOIS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS

PERSONNEL #1-20, Individually and in their Official Capacity (the name John Doe being

fictitious, as the true names are presently unknown).

## JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and the Fifth, Eighth, and/or Fourteenth Amendments to the United States Constitution.

3.      Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367 with respect to Plaintiff's state law claims.

## VENUE

4.      Venue is properly laid in the Southern District of New York under U.S.C. §1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiff demands a trial by jury in this action on each and every one of his claims for which a jury trial is legally available.

## PARTIES

6.      Plaintiff ISAIAH MONTGOMERY is an African American male, a citizen of the United States, and at all times relevant to the Complaint, was incarcerated as both a pretrial detainee and a sentenced misdemeanant at the Orange County Jail, 110 Wells Farm Rd., Goshen, NY 10924. Plaintiff currently resides in Clayton, N.C.

7.      At all times relevant herein, Defendant, ORANGE COUNTY (New York)(hereinafter "ORANGE COUNTY"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      At all times relevant herein, Defendant, ORANGE COUNTY, maintains the ORANGE COUNTY SHERIFF'S OFFICE, and the Orange County Correctional Facility ("OCCF" and/or "Orange County Jail"), duly authorized public authorities and/or correctional department(s), authorized to perform all functions of a correctional department as per the

applicable sections of the New York State Correction Law, acting under the direction and supervision of the aforementioned municipal corporation, ORANGE COUNTY.

9. At all times relevant herein, individually named Defendants, C.O. ANDREW HANKINS, Shield No. 441, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, were duly sworn corrections officers of said department or other Department of Corrections personnel responsible for the care of inmates at OCCF and were acting under the supervision of said department and according to their official duties.

10. At all times relevant herein, Defendant, SHERIFF CARL E. DUBOIS was a duly sworn officer of defendant ORANGE COUNTY. Defendant DUBOIS was the Sheriff of the Orange County Sheriff's Office who, together with defendant ORANGE COUNTY maintains, manages, operates, controls the OFFC, and together were responsible for the care of inmates and the maintenance, management, operation, and policymaking decisions for the OCCF.

11. That at all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York.

12. Each and all of the acts of the individual Defendants alleged herein were done by said Defendants while acting within the scope of their employment by Defendants ORANGE COUNTY.

13. Each and all of the acts of the individual Defendants alleged herein were done by said Defendants while acting in furtherance of their employment by Defendants ORANGE COUNTY.

14. The true and complete names, ranks shield numbers, and/or positions of

3

Defendants CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20 are not currently known. However, they were employees and/or agents of ORANGE COUNTY on the dates relevant to the Complaint herein. Accordingly, they may be entitled to representation in this action by the Orange County Attorney's Office upon their request, pursuant to New York State General Municipal Law § 50-k. The Orange County Attorney's Office, then, is hereby put on notice (a) that Plaintiff intends to name said officers and/or employees as Defendants in an amended pleading once their true and complete name, rank, shield number, and/or position become known and (b) that the Orange County Attorney's Office should immediately begin preparing their defense(s) in this action.

15.     All of the Individual Defendants' acts and omissions hereafter complained of were carried out intentionally, recklessly, or with malice, and/or gross disregard for Plaintiff.

**FACTS**

***Orange County Correctional Facility ("OCCF")***

16.     The OCCF is a regional medium-level security facility in Goshen, New York with a capacity of 141 inmates. The monthly average of total bookings in the OCCF is approximately 288 inmates.

17.     The OCCF is supervised by approximately 22 staff members and holds male and female detainees with low, medium-low, medium-high, and high security classification levels for periods longer than 72 hours.

18.     The OCCF houses state and federal pretrial detainees as well as convicted prisoners serving sentences of less than one year. In addition, OCCF also serves as a detention center for Immigration and Customs Enforcement ("ICE").

19.     Defendants ORANGE COUNTY and the Orange County Sheriff's Office own, maintain, operate, and set policy for OCCF including the promulgation of rules, security, and safety measures.

20.     In December 2022, defendant SHERIFF CARL E. DUBOIS was the acting Sheriff of defendant ORANGE COUNTY, and as such, was a policy maker for the OCCF.

***Boiled/Hot Liquids – a Well Known, Obvious and Widely Utilized Weapon of Inmate Assault***

21.     In prisons throughout New York state, this country and even worldwide, hot and/or boiling liquids have been used by inmates to assault and inflict pain and injury on other inmates and corrections personnel.

22.     This is not a new phenomenon and has been occurring frequently for years. In fact, these weapons have become so commonplace that they have been incorporated into prison jargon, earning nicknames such as "stingers" and/or "jail napalm" amongst inmates and jail staff.

23.     Moreover, not only is the weaponization of boiling liquid/water a well-known tool of inmate assault, but its dangerousness is without question.

24.     Weaponized boiled water can cause pain and damage to the skin from moist heat or vapors. This type of burn can be dangerous because it destroys affected tissues and cells. Its severity and dangerousness are also exacerbated by the fact that it has the capacity to be deployed quickly and cover significant areas of the body resulting in more significant and serious injuries.

25.     Weaponized boiled water/liquids can cause 1st, 2nd and 3rd Degree and result in substantial pain and permanent scarring. Individuals may even go into shock from the heat, and, in the most severe cases, these burns can be life-threatening and can cause death.

26.     In fact, in 2023 the New York State Department of Corrections and Community Supervision authored its first ever Prison Violence Task Force Report, which found that from December 2021 through December 2022, there were nearly two hundred (200) incidents violence committed by inmates using hot/boiling waters and liquids throughout prisons in New York state.

27.     This represented the highest amount of weapon-related inmate violence for any category of contraband except for knives/cutting instruments.

28.     While this was the only the first *Task Force Report* ever drafted documenting these categories of weapons and violence, it only confirmed what the prison population has known for years – namely, that the weaponization of hot/boiling liquids is an obvious, known, and well documented dangerous hazard in jails throughout New York state.

29.     Specifically, for years prior to this report, prison officials and administrators throughout New York, including the OCCF, have been aware of the popularity of this particular weapon of assault, its dangerousness, and the severity of the injuries that can occur as a result. Indeed, over the years, the OCCF has had dozens of incidents of violence involving inmates using hot and/or boiling water/liquids to commit assaults against other inmates and corrections staff.

30.     As a result, the dangers present by allowing inmates access to hot water/liquids and/or the ability to heat water or liquids are similarly known and obvious to prison officials everywhere, including those in New York and the OCCF.

31.     Equally known and obvious to prison officials in New York and the OCCF are the dangers presented in allowing inmates access to hot water/liquids and/or the ability to heat water

or liquids without stringent security and supervisory measures in place to prevent the misuse and/or the weaponization of these items.

32.     In fact, because of these known and obvious dangers, many prison facilities throughout the New York and the United States deny inmates any access to heating elements of any kind because of their widespread misuses and their capacity to be used as and/or create dangerous and deadly instruments of assault.  The OCCF is not one of these facilities.

33.     In others, prisons rules severely limit and/or strictly supervise the use heating elements and boiling or hot water so as to avoid the serious and permanent injuries that can result in their weaponization. The OCCF is not one of these facilities.

34.     By contrast, the OCCF has no rules whatsoever barring, limiting, or proscribing the possession of boiling water or liquids by inmates.

35.     The OCCF has no special rules, limitations, or supervision on the use of heating elements and devices used by inmates to heat/boil liquids or water.

36.     In fact, inmates at the OCCF are allowed unfettered access to microwaves and other cooking devices/tools that can readily be used to heat water/liquids beyond boiling in the common areas without safety protocols of any kind.

37.     Not only does OCCF allow inmates to use such instruments without restriction, or limitation but they are commonly and frequently unsupervised and/or under supervised when doing so.

38.     Simply put, despite their knowledge of the dangers present in allowing inmates access to boiling water and/or heating elements to heat liquids/water as well as their knowledge of the frequency of incidents of assaults that have occurred via this mechanism of injury in the past, it is the policy of defendants ORANGE COUNTY and DUBOIS to allow inmates

unrestricted access to microwaves, hot and/or boiling liquids and other cooking mechanisms with minimal or no supervision and with no rules proscribing the use, limit, manner or nature of that use.

*The November Incident on the Yard*

39.     From on or around August 2022 through December 2022, Plaintiff ISAIAH MONTGOMERY was in the custody of Defendant ORANGE COUNTY in the Orange County Jail, as both a pretrial detainee awaiting trial on misdemeanor charges, and separately as a sentenced inmate serving out a misdemeanor sentence.

40.      On or around November 2022, Plaintiff was involved in a verbal altercation with another inmate, whose name, upon information and belief is Arthur Thomas (hereinafter "Inmate Thomas") during a basketball game while on the yard.

41.     Specifically, while Plaintiff was playing basketball with several other inmates, he was confronted by Inmate Thomas, who began harassing and becoming verbally aggressive towards Plaintiff.

42.     During this exchange, Inmate Thomas threatened to shoot and kill Plaintiff – namely, that if they were in the street, "he would have shot [Plaintiff]."

43.     During this confrontation Inmate Thomas made this death threat as well as several other menacing comments.

44.     The exchange lasted for approximately ten (10) minutes in full view of everyone in the yard, including any guards supervising the yard; however, upon information and belief, the corrections officers responsible for guarding Plaintiff, supervising inmates on the yard were not on their assigned posts.

45.     Thus, said C.O.s were either on notice that Plaintiff was being targeted and was at risk of being further assaulted and injured, or were knowingly derelict of there duty to supervise inmates on the yard in order to prevent – or be on notice in order to prevent – harm to inmates.

46.     Further, Plaintiff's attacker, Inmate Thomas, was known by OCCF staff to have violent proclivities and/or to have previously victimized other inmates.

*The Violent Attack on Plaintiff on December 1, 2022*

47.     Following this confrontation between Plaintiff and Inmate Thomas in November 2022, during which time Inmate Thomas had threatened Plaintiff's life, Plaintiff was not placed in protective custody nor was a "no contact" placed between Plaintiff and Inmate Thomas.

48.     Subsequently, on or about December 1, 2022, at approximately between 4:30 p.m. and 5:30 p.m., while Plaintiff was in the custody of Defendant ORANGE COUNTY, at the Orange County Jail, in the Unit Bravo 4 (B4) day room/recreation room he was attacked by Inmate Thomas who violently assaulted him and burned him during said assault by pouring a boiling hot cup of water over Plaintiff's face and body, that upon information and belief, had been microwaved for approximately 7-8 minutes.

49.     As a result, Plaintiff's skin began to literally melt off his face and body, as he experienced first, second, and third degree burns of his body over his upper body. (Attached as "**Exhibit A"** are photographs of Plaintiff's burn injuries).

50.     In addition, after Inmate Thomas poured scalding water on Plaintiff, said inmate attempted to continue said assault on Plaintiff by throwing punches at Plaintiff's person.

51.     This attack with scalding hot water caused Plaintiff severe injuries and pain, including, but not limited to, severe burns which required medical treatment and hospitalization and may require future surgeries. (See **Exhibit A**).

52.     Further, at the time of the attack, the C.O. responsible for guarding Plaintiff and the dayroom/rec room, upon information and belief, Defendant HANKINS, was sitting at the officer's desk, approximately five (5) feet from where the incident occurred and had observed Plaintiff's assailant, Inmate Thomas, place said cup of water in said microwave and microwave same for 7-8 minutes until the water inside the cup was boiling, but did nothing to intervene to prevent said attack from occurring or prevent said inmate from boiling this cup of water for 7-8 minutes.

53.     In addition, upon information and belief, immediately prior to the attack, Defendant HANKINS observed Plaintiff's assailant, Inmate Thomas, remove said boiling cup of water from the microwave and further observed Plaintiff's assailant aggressively walk towards Plaintiff with same in that Plaintiff's assailant walked directly passed the desk where Defendant HANKINS was stationed. However, Defendant HANKINS did not do anything to prevent this obvious and imminent assault from occurring upon making these observations.

54.     In addition, other corrections officers, Defendants CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, responsible for guarding Plaintiff were not on their assigned posts at the time the assault occurred and were therefore unable to prevent same before it occurred as they were not present when they should have been.

55.     Upon information and belief, Plaintiff's attacker, Inmate Thomas, had victimized other inmates prior to his attack against Plaintiff, including making threats towards Plaintiff, and OCCF corrections officers/staff were on notice of his violent proclivities. Notwithstanding, OCCF officers/staff were negligent, grossly negligent, and/or reckless in safeguarding Plaintiff from this attack.

56.     After several minutes of enduring this horrific attack, additional OCCF officers finally entered the day room and rushed Plaintiff to the clinic, which upon information and belief is operated and staffed by employees and/or agents of Defendant ORANGE COUNTY.

57.     At the clinic, Plaintiff was provided extremely minimal treatment for his injuries. In addition, Plaintiff was not immediately transported to a nearby emergency room/hospital for further evaluation of his serious injuries.

58.     Rather, approximately thirty (30) minutes after Plaintiff arrived at the clinic, Plaintiff was cleared to return to his housing unit without any further medical treatment, and OCCF corrections officers escorted Plaintiff from the medical clinic back to his housing unit.

59.     However, Plaintiff's skin was quite literally boiling off his body and he needed more serious and substantial medical attention from an emergency room and/or hospital, but was nevertheless denied such treatment for his severe injuries. (See **Ex. A**).

60.     Defendant HANKINS and/or Defendant CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, also failed to ensure that Plaintiff be provided with proper, adequate, and/or timely medical attention.

61.     As a result, Plaintiff's injuries continued to worsen throughout the night and into the next morning, and Plaintiff continued to be in severe pain as a result.

62.     Eventually, Plaintiff was finally transported to a hospital/outside medical facility for his injuries.

63.     As a result of this incident, Plaintiff suffered serious permanent injuries – namely, severe burns, blisters, swelling, and pain, to, *inter alia*, his neck, chin, chest, left arm, left armpit, stomach, and face, as more fully documented in his medical records, as well as emotional distress. (See **Ex. A**).

64.    In addition, as a result of the foregoing, Plaintiff is currently receiving continued medical treatment for the above-referenced injuries and will likely need additional surgeries due to the injuries which were caused as a result of both the above-mentioned incident and the minimal and/or lack of adequate and/or timely medical treatment that followed.

65.    As a result, Plaintiff has permanent scarring throughout his body (all over his neck, chin, chest, left arm, left armpit, stomach, and face) that continues to be painful and causes him great discomfort. (See **Ex. A**).

66.    Upon information and belief, Inmate Thomas had planned this attack. Specifically, *inter alia*, Inmate Thomas was able to boil a cup of water in the microwave for approximately between seven (7) and eight (8) minutes in full view of Defendant HANKINS, however, neither Defendant HANKINS nor any other OCCF officers intervened to prevent this incident from occurring.

67.    The Defendant officers in Orange County Jail either failed to properly supervise these inmates to prevent this from happening and/or were deliberately indifferent to the safety and wellbeing of Plaintiff and the other inmates in the facility.

68.    Defendants failed in their duty to protect and safeguard Plaintiff from this attack. Specifically, upon information and belief, the attack took place in the presence of Defendant HANKINS when OCCF corrections officers, including, but not limited to Defendant HANKINS were on notice or should have been, that Plaintiff was in danger, but either deliberately ignored the inherent and obvious risk of harm to Plaintiff and/or otherwise stood idly by as the assault continued and took no actions to stop it.

69.    Moreover, this attack was allowed to occur though the deliberate indifference of Defendants ORANGE COUNTY and DUBOIS via the OCCF,  who were aware of previous

incidents where inmates had weaponized boiling or scalding liquids in the past against other inmates and staff yet allowed inmates to have unfettered access to boiling water and heating elements to achieve same.

70.     Defendants ORANGE COUNTY and DUBOIS via the OCCF were aware of known and obvious dangerousness of the use of hot or boiling liquids as a weapon and the severity of harm and injury that could result if inmates were to have access to such potentially dangerous items. Their policy of allowing inmates access to boiling water/liquids and/or heating elements to accomplish the same was deliberately indifferent to the severity of this known danger.

71.     Defendants ORANGE COUNTY and DUBOIS via the OCCF were aware of known and obvious risk of allowing inmates to have access to heating units or boiling water without sufficient safety protocols in place that would allowed inmates, such as Inmate Thomas, to heat up a cup of liquid for over seven (7) minutes in the microwave and then be in a position to assault another inmate or staff.

72.     Defendants ORANGE COUNTY and DUBOIS via the OCCF were aware of known and obvious risk of allowing inmates to have access to heating units or boiling water without sufficient supervision or supervisory personnel within sufficiently close proximity to the heating elements so as to be in a position to prevent inmates, such as Inmate Thomas, to heat up a cup of liquid for over seven (7) minutes in the microwave and then be in a position to assault another inmate or staff.

73.     The deliberate indifference to these known risks are evident by the existence of the following policies patterns, and/or practices: failing to properly supervise inmates who have access to kitchen facilities/hot water, including, but not limited to hot pots, microwaves, and/or

other potentially dangerous kitchen instrumentalities and/or generally failing to supervise inmates such that they can engage in violent assaults towards other inmates, refusing to provide victim inmates with adequate medical treatment, maintaining a virtually useless system for investigating inmate on inmate assaults, failing to take precautionary measures to prevent inmates who are known to have violent proclivities from engaging in acts of violence towards other inmates, failing to properly house violent inmates, failing to properly search inmates for weapons, being deliberately indifferent to the safety/welfare/well-being of inmates, et al. and/or has a pattern of failing to adequately protect inmates from harm and from serious risk from other inmates.

74. Upon information and belief, Defendants ORANGE COUNTY has a pattern of failing to ensure that adequate screening and health assessments are provided following assaults where inmates at Orange County Jail are injured.

75. Upon information and belief, Defendants ORANGE COUNTY has a pattern of failing to develop and implement appropriate medical screening instruments that identify observable and non-observable medical needs, including those following assaults/inmate-on-inmate violence, and ensure timely access to a physician when presenting symptoms require such care.

76. Upon information and belief, Defendants ORANGE COUNTY has a pattern of failing to provide access to health care, ensure inmates have adequate access to health care, ensure that the medical request process for inmates is adequate and provides inmates with adequate access to medical care. This process should include logging, tracking, and timely responses by medical staff.

77.     As a result of the foregoing, Plaintiff ISAIAH MONTGOMERY suffered and continues to suffer severe and permanent physical injuries, humiliation, and extreme emotional distress.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983**

78.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

79.     All of the aforementioned acts of all Defendants, their agents, servants, and employees, were carried out under the color of state law.

80.     All of the aforementioned acts deprived Plaintiff ISAIAH MONTGOMERY of the rights, privileges, and immunities guaranteed to citizens of the United States by the, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

81.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as correctional officers and/or corrections personnel, with all the actual and/or apparent authority attendant thereto.

82.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as corrections officers and/or corrections personnel, pursuant to the customs, usages, practices, procedures, and the rules of ORANGE COUNTY, DUBOIS and the OCCF, all under the supervision of ranking officers/supervisors of said departments.

83.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## DELIBERATE INDIFFERENCE TO PLAINTIFF'S WELFARE & SAFETY UNDER 42
## U.S.C. § 1983

84.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

85.     Defendants ORANGE COUNTY, DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard for Plaintiff's rights failed or refused to do so.

86.     By their deliberate indifference to Plaintiff's welfare and safety, Defendants ORANGE COUNTY, DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, deprived Plaintiff of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under 42 U.S.C. § 1983 including, without limitation, rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

87.     Defendants DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment with the OCCF.

88.     Defendants ORANGE COUNTY, DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by

42 U.S.C § 1983 and by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

89.      As a proximate cause of the acts of Defendants ORANGE COUNTY, DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, Plaintiff suffered *inter alia*, severe physical injury, medical expenses, and severe mental and emotional anguish in connection with the deprivation of his aforementioned constitutional and statutory rights.

### THIRD CAUSE OF ACTION
### <u>VIOLATION OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS</u>
### <u>UNDER 42 U.S.C. § 1983</u>

90.      Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

91.      As a result of Plaintiff's mandatory incarceration, the Defendants (ORANGE COUNTY, DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20) created a special relationship under which they had a duty under the Due Process Clause to assume the responsibility for Plaintiff's safety and general well-being.

92.      Defendants ORANGE COUNTY, DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, knew of the obvious dangers and had the power to prevent or aid in preventing the violent attack on his person, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard for Plaintiff's rights failed or refused to do so.

93.      Defendants ORANGE COUNTY, DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, deprived

Plaintiff of his substantive due process rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under 42 U.S.C. § 1983 including, without limitation, rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

94.     Defendants DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20 acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment with the OCCF.

95.     Defendants ORANGE COUNTY, DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C § 1983 and by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

96.     As a proximate cause of the acts of Defendants ORANGE COUNTY, DUBOIS, HANKINS, and CORRECTIONS OFFICERS "JOHN DOE" #1-20 and/or CORRECTIONS PERSONNEL #1-20, Plaintiff suffered *inter alia*, severe physical injury, medical expenses, and severe mental and emotional anguish in connection with the deprivation of his aforementioned constitutional and statutory rights.

**FOURTH CLAIM FOR RELIEF**
**DELIBERATE INDIFFERENCE TO MEDICAL NEEDS UNDER 42 U.S.C. § 1983**

97.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

98.     All Defendants knew that Plaintiff had sustained severe and serious injuries which required treatment for his injuries.

99.     Notwithstanding this knowledge, all Defendants refused to provide adequate medical treatment in a timely fashion and refused to ensure that Plaintiff received the proper treatment.

100.     In so doing, all Defendants exhibited a deliberate indifference to the health, safety, welfare, and medical needs of Plaintiff, in violation of his constitutional rights as secured by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

101.     In addition, Defendants ORANGE COUNTY, DUBOIS were responsible for supervising and training the medical staff who provided treatment to Orange County Jail inmates and detainees and failed to properly supervise and train the medical staff regarding the negligent medical treatment provided to Plaintiff as outlined herein.

102.     As a result of the inadequate supervision provided by Defendants ORANGE COUNTY and DUBOIS, plaintiff was deprived of the rights, privileges, and immunities secured by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

103.     As a result of all Defendants' deliberate indifference to Plaintiff's medical needs, Plaintiff suffered severe and permanent injuries.

## FIFTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983
### *(As to Defendants Orange County, Dubois)*

104.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

105.     Defendants ORANGE COUNTY and DUBOIS, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage,

practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

106.    The aforementioned customs, policies, usages, practices, procedures, and rules of ORANGE COUNTY, DUBOIS and the OCCF include, but are not limited to, the following unconstitutional practices:

i.      Deliberately ignoring and/or disregarding the known risks, dangers and propensity of use of weaponized hot water/liquids by inmates by allowing inmates to have unfettered access to boiling water and/or heating elements to accomplish same;

ii.     Deliberately ignoring and/or disregarding the known risks, dangers and propensity of use of weaponized hot water/liquids by inmates by allowing inmates to have access to boiling water and/or heating elements to accomplish same without sufficient safety procedures and personnel present to prevent against the use of those items as weapons of assault;

iii.    Failing to prevent or aid in preventing inmates from being the victims of brutal acts of physical violence perpetrated by other inmates;

iv.     Failing to intervene to stop inmates from engaging in brutal acts of physical violence against other inmates once they have begun;

v.      Refusing to provide victim inmates with medical treatment in order to cover up their own failure to prevent and/or intervene to stop acts of physical violence perpetrated by inmates against other inmates;

vi.     Refusing to provide victim inmates with adequate medical treatment in order to cover up their own failures to prevent and/or intervene to stop acts of physical violence perpetrated by inmates against other inmates;

vii.    Propagating and maintaining a virtually useless system for investigating attacks on inmates by other inmates, including but not limited to generating superficial incident reports that are frequently incomplete, misleading, and/or intentionally falsified in order to cover up their own failure to prevent and/or intervene to stop acts of physical violence perpetrated by inmates against other inmates;

viii.   Failing to take precautionary measures to prevent inmates who are known to have violent proclivities and/or who have previously

20

victimized other inmates, from engaging in acts of physical violence towards other inmates;

ix. Failing to properly supervise inmates who have access to kitchen facilities/hot water, including, but not limited to hot pots, microwaves, and/or other potentially dangerous kitchen instrumentalities and/or generally failing to supervise inmates such that they can engage in violent assaults towards other inmates;

x. Failing to maintain proper levels of staffing (i.e. having inadequate staffing) and/or procedures needed to protect inmates from assaults and/or to prevent violent confrontations amongst the inmates and properly secure OCCF facilities;

xi. Failing and/or refusing to provide victim inmates with adequate medical treatment;

xii. Being deliberately indifferent to the safety, welfare, health, and well-being of inmates and otherwise depriving inmates of their constitutional rights;

107. Defendants ORANGE COUNTY and DUBOIS were on notice of these policies, practices, and customs and failed to take any action to prevent the harm caused to inmates such as Plaintiff.

108. The foregoing customs, policies, usages, practices, procedures, and rules of ORANGE COUNTY and DUBOIS constituted deliberate indifference to the safety, well-being, and constitutional rights of the Plaintiff.

109. The foregoing customs, policies, usages, practices, procedures, and rules of ORANGE COUNTY and DUBOIS were the direct and proximate cause of the constitutional violations suffered by the Plaintiff as alleged herein.

110. The foregoing customs, policies, usages, practices, procedures, and rules of ORANGE COUNTY and DUBOIS were the moving force behind the constitutional violations suffered by the Plaintiff as alleged herein.

111.     Defendants ORANGE COUNTY and DUBOIS collectively and individually, while acting under color of state law, were directly and actively involved in violating the Plaintiff's constitutional rights.

112.     Defendants ORANGE COUNTY and DUBOIS, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate corrections officers and/or medical personnel, and were directly responsible for the violation of the Plaintiff's constitutional rights.

113.     The acts complained of deprived the Plaintiff of his right:

    a.     To be free from cruel and unusual punishments;

    b.     To receive timely and adequate medical care;

    c.     To be provided with appropriate safety while in custody;

    d.     Not to have summary punishment imposed upon him; and

    e.     To receive equal protection under the law.

## PENDANT STATE CLAIMS

114.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

115.     On or about January 25, 2023, within (90) days after the claim herein accrued, the Plaintiff duly served upon, presented to, and filed with Defendant ORANGE COUNTY, a Notice of Claim setting forth all facts and information required under the General Municipal Law § 50 (e).

116.     Defendant ORANGE COUNTY has wholly neglected or refused to make an adjustment or payment thereof and more than thirty (30) days have elapsed since the presentation of such claim as aforesaid.

117. Defendant ORANGE COUNTY demanded a hearing pursuant to General Municipal Law § 50-h and said hearing was held on April 5, 2023.

118. This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

119. Plaintiff has complied with all conditions precedent to maintaining the instant action.

120. This action falls within one or more of the exceptions as outlined in C.P.L.R. § 1602.

## FIRST CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## VIOLATIONS OF THE NEW YORK STATE CONSTITUTION

121. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

122. Such conduct breached the protections guaranteed to Plaintiff by the New York State Constitution, including but not limited to, Article 1, §§ 1, 5, 6, and 11, and including the following rights:

    a.     freedom from cruel and unusual punishment; and

    b.     freedom from deprivation without due process of law.

123. As a direct and proximate result of Defendants' deprivations of Plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, Plaintiff suffered the injuries and damages set forth above.

## SECOND CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## NEGLIGENCE/GROSS NEGLIGENCE/RECKLESSNESS

124. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

125. On December 1, 2022, the Plaintiff was within the custody and control of the Defendants ORANGE COUNTY, and/or their agents, servants, and/or employees.

126. Defendant ORANGE COUNTY, through its employees, agents, and/or representatives committed the foregoing acts.

127. Defendants did not take any meaningful steps to prevent the foregoing from occurring.

128. At all times herein the individually named Defendants were acting in the scope of their employment for Defendants ORANGE COUNTY.

129. Defendants were negligent, grossly negligent, reckless, and/or careless when they committed the foregoing acts which caused Plaintiff injuries.

130. Defendants were negligent, grossly negligent, reckless, and/or careless in that Defendants failed to take steps to avoid the occurrence; and were otherwise negligent, grossly negligent, careless, and reckless; and, when they failed to prevent the foregoing acts from occurring.

131. Defendants had a duty of care in their interactions with Plaintiff as a person in their custody.

132. Defendants violated their duty of care, which was a direct and proximate cause in bringing about the Plaintiff's severe injuries and conscious pain and suffering.

133. In additon, Defendants have a legal duty to Plaintiff as a person detained in their care and custody to provide for the protection of inmates. The Defendants breached that duty in negligently operating and managing the facilities by the above-described acts.

134. The foregoing December 1, 2022, incident and the resulting injuries to Plaintiff were caused solely and as a direct and proximate cause of the carelessness, negligence, gross

negligence, and/or recklessness on the part of Defendants ORANGE COUNTY their servants, agents, employees, and/or licensees, and without any negligence on the part of the Plaintiff contributing thereto. Specifically, the Defendants had a duty to protect Plaintiff from being assaulted by other inmates as a result of their status as corrections officers, breached said duty by failing to intervene when Plaintiff was assaulted by Inmate Thomas, and this failure was objectively unreasonable. Further, Defendants had a duty to provide adequate and timely treatment to Plaintiff, as a result of their status as jail medical personnel, breached said duty by failing to provide said adequate and timely treatment after Plaintiff was assaulted, and this failure was objectively unreasonable.

135.    Defendants, jointly and severally, negligently caused injuries by violating their duties to Plaintiff, including extreme emotional distress, serious physical injuries, and damage to Plaintiff. The acts and omissions of the Defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

136.    As a direct and proximate result of the foregoing, Plaintiff, sustained, *inter alia*, specific and serious bodily injury, emotional distress/psychological and emotional injury, mental anguish, shock, fright, apprehension, embarrassment, humiliation, deprivation of constitutional rights, conscious pain and suffering, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

95.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

96. Defendants owed a duty to maintain Plaintiff's safety and well-being.

97. Defendants breached that duty by failing to protect him and endangering his physical safety.

98. The aforementioned conduct was extreme and outrageous and exceeded all reasonable bounds of decency.

99. Defendants' breach was the direct and/or proximate cause of Plaintiff's injury.

100. As a result of the aforementioned conduct, Plaintiff suffered severe emotional distress, and physical and mental injury, together with embarrassment, humiliation, shock, and fright.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

    i. an order awarding compensatory damages in an amount to be determined at trial;

    ii. an order awarding punitive damages in an amount to be determined at trial;

    iii. reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

    iv. directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs, and disbursements of this action.

Dated: New York, New York
October 18, 2023

BY: _____/S_____
ILYSSA FUCHS
JOSHUA FITCH
GERALD COHEN
COHEN & FITCH LLP
*Attorneys for Plaintiff*
233 Broadway, Suite 900
New York, N.Y. 10279

(212) 374-9115
ifuchs@cohenfitch.com
jfitch@cohenfitch.com
gcohen@cohenfitch.com

# EXHIBIT
# "A"













