UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ISAIAH MONTGOMERY,

                        Plaintiff,

v.

ORANGE COUNTY (NEW YORK), *et al.*,

                       Defendants.

No. 23-CV-5865 (KMK)

ORDER

---

Appearances:

Ilyssa S Fuchs, Esq.
Cohen and Fitch LLP
New York, NY
*Counsel for Plaintiff*

Stephanie Tunic Midler, Esq.
County of Orange Attorney's Office
Goshen, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

      Isaiah Montgomery ("Plaintiff" or "Montgomery") brings this Action, pursuant to 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1988 ("Section 1988"), and the Fourth, Fifth, Sixth, Eighth, and/or Fourteenth Amendments, against Orange County (New York) ("Orange County"), Sheriff Carl E. Dubois ("Dubois"), Corrections Officer Andrew E. Hankins ("Hankins"), and Corrections Officers John Doe #1–20 and/or Corrections Personnel #1–20 ("C.O. John Does"), (collectively, "Defendants"). (*See generally* First Am. Compl. ("FAC") (Dkt. No. 21).) Before the Court is Defendants Orange County, Dubois, and Hankins' Motion to Dismiss Plaintiff's FAC. (*See* Not. of Mot. (Dkt. No. 34).) For the reasons stated herein, the Motion is granted.

I.  Background

A.  Factual Background

Plaintiff, at all times relevant to the FAC, was incarcerated as both a pretrial detainee awaiting trial on misdemeanor charges, and separately as a sentenced inmate serving out a misdemeanor sentence at the Orange County Correctional Facility ("OCCF") in Goshen, NY. (*See* FAC ¶¶ 6, 39.)  On December 22, 2022, Plaintiff suffered injuries when a fellow inmate, with whom he had been involved in prior verbal altercation in November 2022 in the presence of the correction officer Defendants, used a communal prison microwave to heat a cup of water to its boiling point and then threw the boiled water at Plaintiff, causing Plaintiff first, second, and third degree burns.  (*See id.* at ¶¶ 16–55.)[1]  Upon information and belief, Plaintiff asserts that Defendant Hankins, who was responsible for guarding Plaintiff and the room in which the incident occurred, was sitting at the officer's desk, approximately five feet from where the incident occurred, but did nothing to intervene to prevent the attack from occurring.  (*See id.* at ¶¶ 52–53.)  Moreover, Plaintiff states that in December 2022, Defendant Dubois was the acting Sheriff of Defendant Orange County, and as such, was a policy maker for the OCCF.  (*See id.* at ¶ 20.)  Plaintiff alleges that the opportunity for this assault occurred as the result of OCCF policy, as established by the municipal Defendants, which allowed inmates unrestricted and un/under-supervised access to heating elements such as microwaves in which liquids may be readily heated to a boil and weaponized as instruments of assault ("weaponized liquid").  (*See id.* ¶¶ 33–37.)[2]  Plaintiff contends that this policy—and/or its deficiencies—existed even though the

---

[1] The term "correction officer Defendants" collectively refers to Defendant Hankins and the unnamed "John Doe" Defendants.

[2] The term "municipal Defendants" collectively refers to Defendants Dubois and Orange County.

dangers of weaponized liquids, including their frequent use by inmates to commit assaults, was obvious and well-known by Defendants. (*See id.* at ¶¶ 21–31.) Plaintiff claims that there had been dozens of similar attacks in recent OCCF history and hundreds in prisons throughout New York state in the year preceding this incident. (*See id.* at ¶¶ 28–29.)

Several minutes after the incident occurred, OCCF officers entered the room and rushed Plaintiff to the clinic, which Plaintiffs claims is operated and staffed by employees and/or agents of Defendant Orange County. (*See id.* at ¶ 56.) At the clinic, Plaintiff was provided minimal treatment for his injuries and was not immediately transported to a nearby emergency room/hospital for further evaluation of his injuries. (*See id.* at ¶ 57.) Instead, approximately thirty minutes after Plaintiff arrived at the clinic, Plaintiff was cleared to return to his housing unit without any further medical treatment, and OCCF corrections officers escorted Plaintiff from the medical clinic back to his housing unit, despite the fact that Plaintiff request additional medical attention. (*See id.* at ¶¶ 58–59.) Consequently, Plaintiff's injuries continued to worsen throughout the night and into the next morning, and Plaintiff continued to be in severe pain. (*See id.* at ¶ 61.) Eventually, Plaintiff was transported to a hospital/outside medical facility for his injuries. (*See id.* at ¶ 62.) As a result of this incident, Plaintiff suffered serious permanent injuries—namely, severe burns, blisters, swelling, and pain, to, inter alia, his neck, chin, chest, left arm, left armpit, stomach, and face—as well as emotional distress. (*See id.* at ¶ 63.) In addition, due to the foregoing, Plaintiff is currently receiving continued medical treatment for the above-referenced injuries and may need additional treatment. (*See id.* at ¶ 64.)

B.  Procedural History

Plaintiff filed his original Complaint on July 10, 2023. (*See* Dkt. No. 1.) After obtaining leave from the Court, on October 19, 2023, Plaintiff filed a First Amended Complaint ("FAC").

(*See* Dkt. No. 21.) On October 31, 2023, Defendants filed a pre-motion letter regarding a potential motion to dismiss Plaintiff's FAC, (*see* Dkt. No. 27), which Plaintiff responded to on November 7, 2023, (*see* Dkt. No. 28). On November 14, 2023, the Court held a pre-motion conference, during which it set a briefing schedule. (*See* Dkt. (Minute Entry Dated 11/14/2023).) Defendants filed the instant Motion to Dismiss on January 26, 2024. (*See* Not. of Mot.; Decl. of Stephanie T. Midler in Supp. of Mot. to Dismiss ("Midler Decl.") (Dkt. No. 35); Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 36).) Plaintiff filed his Opposition on February 26, 2024. (*See* Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp.") (Dkt. No. 37).) Defendants filed their Reply on March 15, 2024. (*See* Reply Decl. of Stephanie T. Midler in Supp. of Mot. to Dismiss ("Midler Reply Decl.") (Dkt. No. 39); Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Reply Mem.") (Dkt. No. 40).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

5

99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

The Court understands Plaintiff to assert various claims arising from the events described above, including claims for failure to intervene/protect against Defendant Haskin, supervisory liability against Defendant Dubois, and municipal liability against Defendant Orange County. (*See generally* FAC.)³ The Court reviews Plaintiff's claims and the Defendants' corresponding arguments to dismiss the claims in turn.

1. Failure to Intervene/Protect Claim

Plaintiff asserts a failure to intervene/protect claim against Defendant Hankins, who Plaintiff alleges was in the room where the December 2022 incident took place. (*See id*. at ¶¶ 52–53.) Defendants argue that Plaintiff fails to state a claim because Hankins had no reason to believe that there was or was going to be a physical altercation between Plaintiff and his alleged assailant. (*See* Defs.' Mem. 6–8.) The Court agrees.

"Under the Eighth Amendment, prison officials must 'take reasonable measures to guarantee the safety of inmates in their custody.'" *George v. County of Westchester*, No. 20-CV-

---

³ The Court notes that Plaintiff's FAC asserts additional claims, including claims regarding deliberate indifference to medical treatment, the Fourth and Fifth Amendments, substantive due process, rights under the New York State Constitution. (*See generally* FAC.) However, Plaintiff explicitly withdraws his deliberate indifference to medical treatment claim. (*See* Pl.'s Opp. at 26 n.1.) As for the rest of the claims, the Court deems them abandoned, as Plaintiff failed to address them in his Opposition. (*See* Pl.'s Opp.) *See Randall v. Dish Net., LLC*, No. 17-CV-5428, 2018 WL 3235543, at *5 (E.D.N.Y. July 2, 2018) (granting defendant's motion to dismiss because "the [p]laintiff's failure to address [certain] claims in his opposition papers to [the] motion [to dismiss]," showed that they were "abandoned") (collecting cases); *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . , a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

1723, 2021 WL 4392485, at *10 (S.D.N.Y. Sept. 24, 2021) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).

> A plaintiff asserting a claim against a corrections officer for failing to intervene in an assault by another inmate must show '(1) that the defendant observed or had reason to know that the plaintiff was involved in a physical altercation with another inmate; (2) that the defendant had a reasonable opportunity to intervene to prevent the attack from continuing; (3) that in failing to intervene, the defendant was deliberately indifferent to a substantial risk of harm to the plaintiff; and (4) that [the defendant's] deliberate indifference to a substantial risk of harm caused the plaintiff some harm.

*Staton v. Eckert*, No. 20-CV-1120, 2024 WL 1051986, at *2 (W.D.N.Y. Mar. 11, 2024) (quoting *Rosen v. City of New York*, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009)). Furthermore, "[a]n officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene." *Rembert v. City of New York*, No. 16-CV-5586, 2019 WL 5742591, at *5 (E.D.N.Y. Nov. 5, 2019) (quoting *Baker v. Tarascio*, No. 05-CV-548, 2009 WL 581608, at *4 (D. Conn. Mar. 6, 2009)). "The test incorporates both an objective and subjective element: the harm must be 'sufficiently serious,' and the defendant must have 'acted with a sufficiently culpable state of mind.'" *Id.* (quoting *Pagan v. County of Orange*, No. 99-CV-12319, 2001 WL 32785, at *2 (S.D.N.Y. Jan. 4, 2001)).

Here, the Court finds that Plaintiff has failed to allege that Hankins "observed or had reason to know that the Plaintiff was involved in a physical altercation with" Plaintiff's alleged assailant. *Staton*, 2024 WL 1051986, at *2 (internal quotation marks and citation omitted). Although Plaintiff alleges that he was involved in a verbal altercation with his alleged assailant just a month prior to the incident at issue, Plaintiff does not allege that Hankins was aware of the prior altercation or had any reason to be aware of it. (*See* FAC.) *See Stewart v. Medina*, No. 23-CV-880, 2024 WL 3106770, at *5 (S.D.N.Y. June 20, 2024) (dismissing plaintiff's Eighth

7

Amendment claim, where, inter alia, plaintiff failed to allege that defendant knew of any threats made against the plaintiff or that the plaintiff had been involved in any prior altercations with assailant); *see also Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (similar); *Brooks v. Deuel Vocational Inst.*, 308 F. App'x 228, 229 (9th Cir. 2009) (holding that prison official was not deliberately indifferent to safety of prisoner, who was attacked by other prisoners with boiling water and clubs, where there wasn't a triable issue of fact as to whether the official knew and disregarded an excessive risk to inmate health or safety); *Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) (concluding that prison security director was not deliberately indifferent with respect to prisoner, who had boiling water poured on him by his cellmate, where the security director was not aware that the cellmate posed a substantial risk of serious injury to prisoner).

    Moreover, even though Plaintiff contends that Hankins was responsible for guarding the room in which the incident occurred and was sitting at the officer's desk, approximately five feet from where the incident occurred, (*see* FAC at ¶¶ 52–53), Plaintiff does not assert that there were any indications that would alert Hankins to the fact that a physical altercation was about to take place, (*see id.*). *See Croney v. Dep't of Corr.*, No. 22-CV-1012, 2024 WL 406682, at *3 (W.D.N.Y. Feb. 1, 2024) ("Courts routinely deny deliberate indifference claims based upon surprise attacks." (internal quotation marks and citation omitted)). It is reasonable that Hankins viewed the warming of a beverage in a microwave as non-threatening activity, and that the subsequent throwing of the beverage was so abrupt and quick that Defendant did not have the opportunity to intervene, such as to prevent it. *See Gilmore v. Rivera*, No. 13-CV-6955, 2014 WL 1998227, at *4 (S.D.N.Y. May 14, 2014) ("[U]nexpected incidents are insufficient to propagate a deliberate indifference claim.")

8

Additionally, to the extent that Plaintiff contends Hankins should have been aware of the risk because use of boiling liquids by inmates to attack other prisoners is an obvious risk, (*see* FAC ¶¶ 21–31), the Court is not convinced at this stage. The Court acknowledges that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Candelaria v. St. Agnes Hosp.*, No. 01-CV-8594, 2010 WL 1221874, at *5 (S.D.N.Y. Mar. 29, 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)), *aff'd sub nom. Candelaria v. Baker*, 464 F. App'x 21 (2d Cir. 2012) (summary order). "A risk may be sufficiently obvious to support an inference of knowledge when, for example, it has been persistent or expressly acknowledged in some way and the defendant was exposed to information concerning the risk and thus must have known about it." *Id.* (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842–43.)

Here, however, the Plaintiff has not adequately alleged that the risk was sufficiently obvious that Hankins should have been aware of it. Rather, Plaintiff makes conclusory statements about the prevalence of such attacks, without sufficient support to substantiate the claims. In addition, Plaintiff cites various out of circuit cases to show that courts have allowed deliberate indifference cases to survive "based on the obviousness of the risk presented in allowing inmate access to objects which could be used as weapons." (Pl.'s Mem. 6 (internal quotation marks and citations).) The Court notes, though, that none of these cases involved boiling water attacks. *Iwanski v. Oklahoma Dept. of Corrs.*, No. 98-5135, 1999 WL 1188836, at *5 (10th Cir. 1999) (steel bed legs); *Wrenc v. Johnson*, No. 04-CV-76, 2006 WL 2092438, at *3 (S.D. Tex. July 26, 2006) (fire and hot rocks); *Naranjo v. Thompson*, No. 11-CV-105, 2014 WL 12648495, at *7 (W.D. Tex. Jan. 2, 2014) (fire extinguishers); *Willis v. McEwen*, No. 11-CV-1683, 2012 WL 6868583, at *9 (S.D. Cal. Sept. 13, 2012) ("brooms, mops, and razor blades");

9

*Williams v. Edwards*, 547 F.2d 1206, 1211 (5th Cir. 1997) ("unsupervised machinery and other resources"); *Smith v. Arkansas Dep't of Corr.*, 103 F.3d 637, 641, 648-50 (8th Cir. 1996) (hobby knives). As such, the Court is not convinced, based on the current record, that the risk was obvious in the instant Action.

Finally, with respect to Plaintiff's argument that Hankin's awareness of the risk can be inferred from the allegations of past instances of inmate assaults using weaponized liquids, (*see* Pl.'s Opp. 4–7), on these pleadings, the Court is unconvinced. Specifically, Plaintiff asserts that in "prisons throughout New York State, this country and even worldwide, hot and/or boiling liquids have been used by inmates to assault and inflict pain and injury on other inmates and corrections personnel" and that a New York State Department of Corrections and Community Supervision Report found that from December 2021 through December 2022, there were about two hundred incidents involving such conduct. (FAC ¶¶ 21, 26.) However, the assertion of a bare and conclusory statement, without support, that such conduct occurs in prisons throughout New York and reference to a report not specific to OCCF is not sufficient to establish that such conduct is so longstanding, pervasive, or well-documented at Plaintiff's prison facility that Defendant Hankins must have been or even should have been privy to this risk. *See Constant v. Prack*, No. 16-CV-3985, 2019 WL 3287818, at *7–9 (S.D.N.Y. July 19, 2019) (holding that plaintiff failed to establish that defendant was deliberately indifferent to a general risk to inmates, where plaintiff did not demonstrate longstanding, pervasive, and well-documented history of similar attacks, even though plaintiff pointed to three previous lawsuits involving similar conduct); *see also Dietrich v. County of Orange*, No. 19-CV-10485, 2020 WL 5209816, at *3 (S.D.N.Y. Sept. 1, 2020) (holding that plaintiff failed to establish longstanding, pervasive, well-documented history of similar attacks necessary to state a failure-to-protect claim based on

10

a general risk of harm in which plaintiff only specified one previous attack of a similar nature on an unspecified date); *Anderson v. Wilkinson*, 440 F. App'x 379 (5th Cir. 2011) (holding that district court clearly erred in finding that prison warden was aware of risk that inmate would heat water in microwave oven and throw it in another inmate's face during night, where inmate who suffered burns did not demonstrate that hot-water-throwing attacks were longstanding, pervasive, well-documented, or expressly noted by the prison officials in the past).[4]

Moreover, the Court has reviewed Plaintiff's citation to out of circuit cases in connection with this argument, and each is distinguishable. For instance, in *Muse v. City of Philadelphia*, unlike the situation here, the court in that case acknowledged that "the warden discussed the [weapon at issue] with the block representatives at a meeting and informed the representatives that the [weapon] would be confiscated if this type of activity continued." No. 05-CV-1554, 2006 WL 8459389, at *8 (E.D. Pa. July 31, 2006). In *Laurier v. D'Ilio*, dissimilar to the instant case, the court explained that the plaintiff had adequately pled the risk of the weapon at issue as obvious and known to the defendant, where the defendant had restricted the weapon for inmates in restrictive housing units, due to its dangers, but allowed its possession by inmates in the general population. No. 15-CV-6043, 2018 WL 638747, at *2, 7 (D.N.J. Jan. 31, 2018). In *Allen v. Ellis*, unlike in this Action, in keeping plaintiff's Eighth Amendment claim alive, the court noted, inter alia, the plaintiff's complaint could be read to indicate the defendant was aware of an altercation between plaintiff and his assailant, such that it was plausible that defendant knew of, but still ignored, a risk of harm to plaintiff. No. 17-CV-652, 2017 WL 3263764, at *2

---

[4] To the extent Plaintiff provides the bare assertion that similar attacks, like the one alleged in this Action, have previously occurred at OCCF, on amendment it would be helpful if Plaintiff includes allegations specific to these prior attacks in order for the Court to evaluate the long standing and/or pervasive nature of such attacks at OCCF.

11

(E.D. Pa. July 31, 2017).  Lastly, in *Plummer v. Valdez*, in ruling that the plaintiff's failure to protect claim could survive, the court relied on the fact that "[defendant] had information about the assaults going on in her jails as a result of inmates boiling hot water to assault inmates," yet "continued to allow the sale of water heaters to inmates, one of whom attacked plaintiff." No. 06-CV-1119, 2006 WL 2713784, at *3 (N.D. Tex. Sept. 21, 2006).

Accordingly, at this stage, the Court concludes that Plaintiff has failed to plead a plausible failure to intervene/protect claim against Defendant Hankins, and therefore, this claim is dismissed.  The Court dismisses the claim without prejudice to allow Plaintiff the opportunity to provide further factual allegations that may assist the Court in evaluating this claim.

2.  Supervisory and Municipal Liability Claims

Plaintiff also asserts claims of supervisory and municipal liability against Defendants Dubois and Orange County based on Plaintiff's underlying failure to intervene/protect claim.  (*See* FAC ¶¶ 104–113.)   However, it is well settled that in order to plead a supervisory and/or municipal liability claim, Plaintiff must establish an underlying constitutional violation.  *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (noting, with respect to a supervisory liability claim, that plaintiff must plead defendant's involvement in an *underlying constitutional deprivation*); *Torcivia v. Suffolk County*, 17 F.4th 342, 355 (2d Cir. 2021) (stating that to establish a municipal liability claim, plaintiff must establish, inter alia, the denial of a constitutional right).  Here, as determined the above, the Court concludes that Plaintiff fails to plead in his FAC an underlying constitutional deprivation.  *See supra* Section II.B.1.  As such, the Court concludes that Plaintiff at this stage cannot successfully mount a supervisory or municipal liability claim.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision

12

not to address the municipal defendants' liability under *Monell* was entirely correct."); *Lopez v. City of New York*, No. 19-CV-3887, 2021 WL 466974, at *7 (S.D.N.Y. Feb. 9, 2021) (same); *see also Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014) ("Because we have held that there was no underlying constitutional violation, there is also no supervisory liability.") Accordingly, the Court dismisses such claims without prejudice, allowing Plaintiff to replead such claims to the extent he remedies the underlying deficiencies.

### III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's FAC is granted. The dismissal is without prejudice because this is the first adjudication on the merits of Plaintiff's claims. Should Plaintiff choose to file an amended complaint, he must do so within thirty days of this Opinion, addressing the deficiencies identified herein. The amended complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain all of the claims and factual allegations Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the thirty-day deadline, the claims that are dismissed could be dismissed with prejudice. The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 34).

SO ORDERED.

Dated:   September 25, 2024
        White Plains, New York

                                            KENNETH M. KARAS
                                            United States District Judge